UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEOEA COLEMAN,

    Plaintiff,                               Civil Action No. 09-12993

v.                                         HON. SEAN F. COX
                                             U.S. District Judge
                                             HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Keoea Coleman brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

On July 16, 2006, Plaintiff filed applications for DIB and SSI, alleging an onset of disability date of May 15, 2006 (Tr. 94-98, 99-101). After the initial denial of her claims, Plaintiff filed a request for an administrative hearing, held on December 11, 2008 in Falls

Church, Virginia before Administrative Law Judge ("ALJ") Deborah Arnold (Tr. 31). Plaintiff, represented by attorney Matthew Taylor, testified by teleconference from Flint, Michigan, as did Vocational Expert ("VE") Mary Williams (Tr. 35-45, 45-48). On February 4, 2009, ALJ Arnold found that Plaintiff could perform a full range of exertional work limited to "simple, repetitive tasks" (Tr. 16, 20). On June 17, 2009, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the administrative decision on July 29, 2009.

## BACKGROUND FACTS

Plaintiff, born July 5, 1982, was 26 when the ALJ issued her decision (Tr. 16, 94). She completed high school (special education) and worked previously as a cashier, greeter, and home health care aide (Tr. 128). Plaintiff alleges disability as a result of a learning disability and back problems (Tr. 127).

### A. Plaintiff's Testimony

Plaintiff testified that after graduating from high school, she attended job training classes (Tr. 36). Reporting that she had not worked in at least two years, Plaintiff alleged that she had been unable to keep up the pace of work required for either the cashier or gas station attendant positions (Tr. 36-37, 42). She indicated that for a time she had also drawn a paycheck from the state for taking care of her disabled mother, adding that various relatives helped her fulfill her home care aide responsibilities (Tr. 37-38, 44). She stated that she had passed a road test to obtain her driver's license, but had not sat for a written exam (Tr. 38). Plaintiff testified that she currently lived in a rented house with her six-year-old and six-

month-old children, noting that her aunt and grandmother lived nearby (Tr. 38-39).

Plaintiff reported that she currently took Motrin and Flexeril for back pain and muscle spasms (Tr. 39-40). She alleged depression, but noted that she had not been seen by a doctor for the condition (Tr. 40). Plaintiff testified that she spent large portions of her day watching television and sleeping (Tr. 40). She indicated that family member generally accompanied her when she went grocery shopping due to her tendency to "spend too much" (Tr. 41). She reported that she could read a newspaper but would not "be able to explain" what she was reading (Tr. 41). Plaintiff added that she quit working at McDonald's because she "didn't like the job," noting that she was told by her supervisor that she was too slow (Tr. 43). She alleged that she became nervous when surrounded by a group of people while working (Tr. 43).

**B.    Medical Evidence**

**1. Treating Sources**

Plaintiff's high school records show that in February, 2001, post-graduation transitional training was recommended (Tr. 190). A post-graduate evaluation indicates that earlier intelligence testing showed a sequential ability score of 70, a simultaneous ability score of 85, and a composite score of 75 (Tr. 195). Plaintiff expressed a desire to work once her child was older (Tr. 202). Emergency room notes created in August, 2004 showed the absence of muscular/skeletal difficulties (Tr. 237). In October, 2004, Plaintiff sought emergency treatment for back and abdominal pain (Tr. 233).

In January, 2007, Plaintiff began a course of mental health counseling (Tr. 319, 326,

335). She was assigned a GAF of 48 with a fair prognosis[1] (Tr. 337). C.A.N. Rao, M.D., performed a psychological assessment in March, 2007 and prescribed Celexa for depression (Tr. 324). She assigned Plaintiff a GAF of 50 (Tr. 324). April, 2007 notes indicate that Plaintiff was discharged after failing to show up for an appointment or responding to telephone calls or letters (Tr. 320). A medication review from the same month states that Plaintiff was "friendly and talkative" (Tr. 322). Upon resuming mental health treatment in September, 2008, Plaintiff was well groomed and cooperative, but alleged anxiety and depression (Tr. 354). Plaintiff was again assigned a GAF of 50 with a fair prognosis (Tr. 356).

**2. Consultive and Non-examining Sources**

In October, 2006, Mark Zaroff, Ph.D., performed a consultive psychological evaluation of Plaintiff on behalf of the SSA (Tr. 290-295). Dr. Zaroff, noting a history of learning disability and vision problems, observed that Plaintiff admitted to good corrected vision (Tr. 290). Plaintiff reported minimal back problems (Tr. 290). She indicated that she met with friends on a regular basis (Tr. 291). Plaintiff, alleging a childhood molestation by her brother, reported that she currently got along well with her sisters (Tr. 291). She indicated that she spent her time cooking, cleaning, and caring for her daughter (Tr. 291). Dr. Zaroff noted that she answered questions "well" but displayed "poor motivation" (Tr.

---

[1] A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM-IV-TR* ) (4th ed.2000).

291-292). Intelligence testing revealed a verbal IQ of 71, performance IQ of 78, and a full scale IQ of 67 (Tr. 292). Citing Plaintiff's current unemployment and lack of social support, Dr. Zaroff assigned Plaintiff a GAF of 48 with a "poor" prognosis (Tr. 295).

The same month, Joe DeLoach, Ph.D., performed a non-examining Mental Residual Functional Capacity Assessment of Plaintiff, finding that her ability to understand and remember detailed instructions, carry out detailed instructions, maintain concentration, conform to attendance policies, and work without supervision was moderately impaired (Tr. 296). Likewise, her ability to complete a workweek without psychologically based interruptions, accept instruction, get along with coworkers, respond appropriately to workplace changes, and set realistic goals was deemed moderately limited (Tr. 297). Dr. DeLoach concluded nonetheless that "Plaintiff retain[ed] the capacity to perform simple tasks on a sustained basis" (Tr. 298).

The same month, Dr. DeLoach completed a Psychiatric Review Technique, finding that Plaintiff experienced mild mental retardation (Tr. 300, 304). Under the "B" criteria, Plaintiff's concentration, persistence, and/or pacing abilities were deemed moderately limited (Tr. 310). The Technique found no episodes of decompensation (Tr. 310).

### C. Vocational Expert Testimony

At the administrative hearing, the ALJ began her examination of the VE by posing the following hypothetical question:

> "[I]f somebody's limited to performing simple, repetitive tasks with no relevant work experience, they're 26 years old and have the equivalent of a fourth grade education, are there jobs such a person could do?"

(Tr. 45). The VE responded that the hypothetical individual could perform the exertionally light work of an assembler (10,500 positions in the regional economy), inspector (2,500), and packer (16,000), noting that the job numbers were reduced to account for Plaintiff's limited education and a preclusion on "fast paced production" work[2] (Tr. 46). VE Williams found that the job numbers would remain unchanged if the individual was limited occasional contact with the public (Tr. 47). As to *sedentary* work, the VE testified that the same individual could perform the work of an assembler (3,300), machine operator (380), and inspector (600) (Tr. 47). The VE stated that her testimony was consistent with the information found in the *Dictionary of Occupational Titles* ("DOT") and *Selected Characteristics of Occupations* ("SCO") (Tr. 47). VE Williams remarked that the need to be redirected several times during the course of the day, if added to the hypothetical limitations, "would impact employment" and "could preclude employment" (Tr. 47).

**D.     The ALJ's Decision**

Citing Plaintiff's medical records, ALJ Arnold found that Plaintiff experienced the "severe" impairment of mental retardation but because the condition was mild it did not meet or medically equal any listed impairment found in Appendix 1, Subpart P, Regulation No.

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

4 (Tr. 14-15). The ALJ determined further that Plaintiff experienced the non-severe impairments of obesity and mild depression (Tr. 14).

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") for "a full range of work at all exertional levels" but was limited to performing "simple, repetitive tasks" (Tr. 16). Citing the VE's job numbers, *supra,* the ALJ determined that Plaintiff could perform the exertionally light jobs of assembler, inspector, or packer, and the sedentary jobs of assembler, machine operator, and inspector (Tr. 19).

The ALJ found Plaintiff's allegations of disability "not credible to the extent they are inconsistent with the residual functional capacity assessment," determining that the medical records supported a finding of non-severe psychological and back problems (Tr. 14, 17-18). The ALJ cited Dr. Zaroff's observations that Plaintiff had "had adequate contact with reality and exhibited normal motor activity" (Tr. 18). Acknowledging Plaintiff's sporadic work history, the ALJ reasoned that the "lack of job success does not mean she is unable to do any work at all" (Tr. 17).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S.

389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at

step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### Listing § 12.05(C)

Plaintiff's counsel argues that the ALJ erred in not finding her disabled at Step Three of the sequential analysis. *Plaintiff's Brief* at 3-6, *Docket #15*. Specifically, she contends that record evidence, showing a full scale IQ between 60 and 70, coupled with emotional limitations, mandates a disability finding pursuant to Listed Impairment §12.05(mental retardation) of 20 C.F.R. Subpart P, Appendix 1. *Id.*

To establish disability as a result of mental retardation, "a claimant must demonstrate three factors to satisfy the diagnostic description: (1) sub-average intellectual functioning; (2) onset before age twenty-two; and (3) adaptive-skills limitations."*Hayes v. Commissioner of Social Sec.,* 357 Fed.Appx. 672, 675, 2009 WL 4906909, *2 (6th Cir. 2009). "Beyond these three factors, a claimant also must satisfy 'any one of the four sets of criteria' in Listing § 12.05. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)." *Id.*; *Foster v. Halter* 279 F.3d 348, 354 -355 (6th Cir. 2001).

> "(A) Mental incapacity evidenced by dependence upon others for personal needs (e.g. toileting, eating, dressing or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> (B) A valid verbal, performance, or full scale IQ of 59 or less; or

(C) A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; or

(D) A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment resulting in at least two of the following:

    (1) Marked restriction of activities of daily living; or

    (2) Marked difficulties in maintaining social functioning;

    (3) Marked difficulties in maintaining concentration, persistence, or pace; or

    (4) Repeated episodes of decomposition, each of extended duration."

Listing § 12.05.

Plaintiff argues that she is entitled to disability pursuant to subsection C, citing record evidence showing a full scale IQ of 67 (Tr. 292). She contends that she also experiences the "significant work-related" limitation of depression, asserting that the ALJ impermissibly overlooked or discounted this evidence. Plaintiff cites Dr. Rao's March, 2007 treating notes to support the conclusion that she experienced significant depression and anger management problems. *Plaintiff's Brief* at 4 (*citing* Tr. 324).

To be sure, the record contains evidence that she experienced limitations other than mild retardation. However, substantial evidence also supports the opposite conclusion. The Court is mindful that an impairment should be omitted at Step Two *i.e.* deemed non-severe "only if the impairment is a 'slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience.'" *Farris v. Secretary of HHS*, 773 F.2d

85, 89 (6th Cir. 1985) (*citing Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir.1984)). However, the ALJ, deliberately omitting depression from the Step Two "severe" impairments, adequately supported her findings that depression created only *de minimis* limitations:

> "The record indicates the claimant has experienced some problems with depression. However, her depression appears to be mild and controlled by medication. . . . [I]n April, 2007, the claimant admitted her medications (Celexa for depression, Trileptal for mood swings, and Geodone for sleep) were beneficial. . . . She reported the medications were helping her to sleep and relax. She also indicated she was not getting moody or upset. She reported no side effects from her medication"

(Tr. 14). The ALJ, also noting that Plaintiff was no longer taking medication, observed that the 26-year-old was nonetheless capable of living alone in a house with her two children and performing cleaning, cooking, and laundry chores (Tr. 14). Likewise, a third-party report states that Plaintiff prepared multi-course meals, paid bills, and shopped for clothes (Tr. 153). Plaintiff herself admitted that she met with friends on a regular basis (Tr. 291).

Plaintiff faults the ALJ for omitting mention of some of the medical records favorable to the disability claim. *Plaintiff's Brief* at 5. However, the ALJ was not required to discuss every scrap of evidence supporting the disability claim in light of substantial evidence supporting the opposite conclusion. "While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each . . . opinion, it is well settled that 'an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Commissioner of Social Security,* 2006 WL 305648, *8-9 (6th Cir. 2006)(*citing Loral Defense Systems-Akron v. N.L.R.B.,* 200 F.3d 436,

453 (6th Cir.1999)).

Ms. Coleman's low IQ and GAF scores are of concern, and she clearly has intellectual and psychological impairments that impact the range of activities of which she is capable, both inside and outside the workplace. Indeed, if I were reviewing this case *de novo*, I might come to a different conclusion. However, under the "substantial evidence" standard, The ALJ's determination is well within the "zone of choice" accorded the administrative fact-finder, and should remain undisturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: August 26, 2010

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 26, 2010.

S/G. Wilson
Judicial Assistant